**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**KIMBERLY SIMMONS,**

        **Plaintiff,**

**v.**                                           **Civil Action No. 3:21-CV-165
(JUDGE GROH)**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This case arises from the denial of Plaintiff Kimberly Simmons' ("Plaintiff") Title II and XVI application for disability insurance benefits ("DIB") and supplemental security income benefits. After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of Commissioner's decision.

Following a review of the parties' motions and the administrative record, because the Commissioner's final decision to deny Plaintiff's claim contains no legal error and is supported by substantial evidence, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge recommending the Plaintiff's Motion for Summary Judgment, ECF No. 14, be **DENIED**, and Defendant's Motion for Summary Judgment, ECF No. 17, be **GRANTED**.

## I.     **PROCEDURAL HISTORY**

On January 31, 2019, Plaintiff Kimberly Simmons ("Plaintiff") filed a claim for disability, DIB, and Title XVI supplemental security income with an alleged onset date of disability of October 1, 2016. R. 15, 18. Plaintiff's claims were initially denied on June 10, 2019, and upon reconsideration on September 10, 2019. R. 15. After the denials, on November 5, 2019, Plaintiff requested a hearing before an ALJ. R. 15. On February 16, 2021, a hearing was held before ALJ Francine A. Serafin. R. 15. On April 14, 2021, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 15-26.

The Appeals Council denied Plaintiff's request for review on August 13, 2021, making the ALJ's decision the final decision of the Commissioner. R. 1-6.

On October 12, 2021, Plaintiff, by counsel Jan Dils, filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. On December 20, 2021, the Commissioner, by counsel Morgan McKee, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. Answer, ECF No. 9; Admin. R., ECF No. 10.

On February 18, 2022, Plaintiff filed Plaintiff's Motion and Memorandum in Support of Plaintiff's Motion for Summary Judgment, ECF No. 14. On March 21, 2022, Commissioner filed her Motion and Brief in Support of Motion for Summary Judgment, ECF No. 17.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## II.   <u>BACKGROUND</u>

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 11 at 1-2. The undersigned relies upon those parties' recitation of the facts[1] throughout this report and recommendation but, for the sake of completeness, after considering the record in full, the undersigned will highlight select factual information below.

### A. Personal History

Plaintiff Kimberly Simmons was born on June 13, 1959, and was an advanced age individual, age fifty-seven (57), on the alleged disability onset date of October 1, 2016. R. 18, 25, 59. She is approximately 5'4" tall and weighs approximately 292 pounds. R. 59. Plaintiff is single; she has two adult sons, four grandsons, and resides with her sister. R. 282, 610.

Plaintiff completed high school, received an Associates in Art Degree, and also studied business at Glenville State College. R. 609-610. Plaintiff previously worked, for approximately a year, as a front desk clerk at a state park, for approximately five months, as a tax preparer, and, on other occasions, as a medical receptionist, medical records analyst, and economic service worker. R. 53-54, 69-70. Plaintiff alleges that she is limited in her ability to work due to depression, anxiety, diabetes mellitus, degenerative disc disease of the lumber and cervical spine, fibromyalgia, obesity, osteoarthritis, status post-right shoulder arthroplasty, radiculopathy, neuropathy, dyslipidemia, thyroid disorder, and history of atrial fibrillation. R. 18, 60.

---

[1] *See* Pl's Mem. Supp. Mot. Summ. J., No. ECF 14-1 at 2-5; Def.'s Brief Supp. Mot. Summ. J., ECF No. 17 at 1-5 (generally agreeing with Plaintiff's proposed facts and supplementing).

### B. Mental Impairments

In his Physical Residual Functional Capacity Questionnaire, completed on August 10, 2017, Dr. Minard wrote that "at times" emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations. 1077. Dr. Minard did not select depression as a psychological condition affecting Plaintiff's physical condition, but did mark the box for anxiety, indicating his belief that anxiety does impact her physical condition. *Id*. Dr. Minard indicated, however, that Plaintiff could tolerate moderate work stress. *Id*.

On April 17, 2019, Plaintiff underwent a Mental Status Examination with licensed psychologist Cynthia Spaulding, M.A. R. 608. Plaintiff reported that her depression and anxiety began approximately eleven years prior. *Id*. She further "estimated that she has 1 panic attack per week, but she avoids things that will trigger a panic attack or she would experience them more frequently." R. 609. Plaintiff reported that, as of the date of the assessment, she was not receiving any mental health treatment and has not required any in-patient mental health treatment since she last underwent outpatient therapy in 2015. *Id*. Plaintiff reported that on a typical day, she "takes care of her dog, sometimes attends to household chores, naps, plays games on her phone, and watches television. She has to pace herself when she completes chores due to her chronic pain and she prepares food 3-4 times per week." R. 611.

Based on the assessment, Spaulding concluded by providing the following diagnostic impressions for Plaintiff – (1) Persistent Depressive Disorder, with Intermittent Major Depressive Episodes, with current Episode, Mild, and (2) Unspecified Anxiety Disorder. Spaulding explained that the diagnosis of Persistent Depressive Disorder was given based on "a long history, over 2 years, of depression, her verbal interactions with this psychologist and reported symptoms. She is sad or irritable more days than not, her sleep onset is delayed, she experiences insomnia, and her

4

energy level is low." R. 611. Regarding the Unspecified Anxiety Disorder, Spaulding explained that Plaintiff "worries constantly, feels unable to control her level of worry, she avoids anxiety inducing situations, and she has panic attacks that occur approximately 1 time per week." R. 611.

On May 7, 2019, Joseph Richard, Ed.D., a state agency psychological consultant, reviewed the record and opined that Plaintiff's mental limitations "appear to be no more than mild" and noted the record "does not indicate severe functional limitations related to mental [medically determinable impairments]." R. 64-65, 78. Richard noted that Plaintiff has not received recent treatment for her mental health disorders, but rather, received "medical management through her PCP w/ almost all key function areas addressed[.]" R. 65, 78.

On August 20, 2019, Plaintiff completed a Function Report. R. 275-282. In the Report, Plaintiff reported that she has "fatigue and depression" and "cannot concentrate and think to keep on task." R. 275. Plaintiff also reported that on a daily basis, she prepares meals, with breaks, watches the news, does her dishes "a little at a time" with time for taking breaks "due to pain," she reads, crochets, plays games on her computer, takes a bath, and watches TV to go to bed. R. 276-277. She further explains she takes care of her dog, including taking it outside to use the bathroom, though her sister also cares for the dog when she is around. *Id.* Plaintiff listed that she is able to wash dishes, put laundry in washer or dryer, dust furniture, and clean the bathroom of her residence. 277. She explains she can shop at grocery story with help from her sister or grandson. R. 278.

Plaintiff further explained that on a regular basis she goes to the church, to the library, to her grandson's weekly baseball games (when in summer season) and goes to lunch with friends. R. 279. Plaintiff noted that sometimes sitting in church or at ball game is difficult due to back pain when sitting or pain associated with walking or standing. R. 280. Plaintiff reported that her ability

to complete tasks, concentration, remember, understand, and follow instructions has declined. R. 280.

On August 29, 2019, upon reconsideration, G. David Allen, Ph.D., state agency psychological consultant, agreed with the prior opinion of state agency psychological consultant Richard, finding that "following review of all pertinent evidence in this file and in light of no new allegations of worsening, and no new evidence, the assessment completed on 05/07/2019 is found to be persuasive and as such is affirmed as written." R. 93.

### C. Treatment by Alex Minard, M.D.

At her August 10, 2017 appointment, Alex Minard, M.D. noted Plaintiff was "alert and appropriate," "obese" and "[h]er gait is normal walking a short distance in the office." R. 390. Dr. Minard noted that Plaintiff "still has marked limitation of range of motion of the right shoulder but she says it was dramatically better than it was." *Id.* Plaintiff had moderately restricted lumbar spine range of motion with pain, negative straight leg raising bilaterally, and normal sensation from just above the knee down. She did not use an assistive device. *Id.* Dr. Minard explained "[h]er lumbar x-rays are relatively unimpressive. I suspect her symptoms are probably primarily from fibromyalgia. I think she might benefit from being on an . . . RI from the arthritis standpoint as well as the fibromyalgia. She stated she is not interested in injections. . . If symptoms do not improve with the low back and left leg numbness, will consider MRI of lumbar spine." R. 391.

On September 21, 2017, Plaintiff presented for a follow-up visit with Dr. Minard regarding her multiple chronic pain issues. R. 384. Dr. Minard reported that "Pain is especially bad with walking and better with heat and laying down. The pain does affect her activity level and her sleep. She has been through physical therapy which ended a month or two ago. Seen minimal progress except temporarily. . . . She recently had a right shoulder replacement and is doing well with that.

She has the start of arthritis in the left shoulder. . . . [M]aybe FM is a little better but still lots of 'bad days.' Also feels like her depression could be responding better than it is." R. 384. Dr. Minard further noted that Plaintiff's "gait is without any assistive device. There is tenderness over the lower lumbar paraspinal gluteal and trochanter bursa worse on the left side. . . . Strength 5 out of 5 throughout the lower limbs. No atrophy. There is 1+ edema in both lower limbs. No calf tenderness. Negative Homans sign. She does not have any warm or swollen joints or any signs of synovitis." R. 385.

During a December 7, 2017 follow-up visit, Plaintiff reported her pain as a 4 on a scale of 0-10. R. 377. Dr. Minard noted that Plaintiff's pain was "especially bad with walking and better with heat and laying down. The pain does affect her activity level and her sleep. She has been through physical therapy. Seen minimal progress except temporary." R. 379.

At a June 25, 2018 follow-up visit, Dr. Minard noted "Pain is worse with walk (limited to 15 minutes) and stand (limited to 10 minutes). Pain better with rest. . . . [Fibromyalgia] widespread pain is unchanged. Pain at rest is better since starting [medication]. Pain worse with activity. . . . We also discussed her weight. . . . [A]ctivity level is very low. She has declined a referral to bariatric surgeon[.] . . . Pt. takes hyrdrocodone only rarely when pain is severe. Was given 20 pills and they lasted for many months. It does relieve her severe pain, there are no side effects." R. 374.

Dr. Minard noted that Plaintiff's gait was without an assistance device, and her strength was "5 out of 5 in the lower limbs." R. 375. Dr. Minard discussed treatment options with Plaintiff, such as epidural injection. *Id.* Dr. Minard noted that Plaintiff would not be a good surgical candidate due to her obesity, and discussed possible referral to bariatric surgery, but Plaintiff stated she did not think it would really work for her because she does not eat a lot anyway. R. 375.

During an October 16, 2018 follow-up visit, Dr. Minard relayed that "in terms of the fibromyalgia, things are about the same. Widespread pain. Very limited by fatigue. Poor sleep at times. In terms of low back pain thee is pain in the lower back and hops and radiates down both legs all the way to the ankle. Her PMD ordered an MRI but insurance will not cover it until she does PT which is starting soon." R. 368. Dr. Minard again noted that Plaintiff was "alert and aware," but commented that "[s]trength is 5 out of 5 distally in both lower limbs but there is some proximal weakness around the hip/we. There is no evident atrophy but it is hard to tell as she does have some lower extremity edema and severe obesity. . . . Hip range of motion is somewhat limited and probably as much due to her obesity [a]s anything but hip range of motion is not painful." R. 369.

In a Physical Residual Functional Capacity Questionnaire completed on January 22, 2021, Dr. Minard explained that Plaintiff's "pain is diffuse, constant at mild and moderate level with episodes of severe pain." R. 1076. He listed her prognoses as "fair" and described that her medication, Cymbalta and hydrocodone, were helping with fibromyalgia pain "partially" and helping when pain is severe. *Id*. Dr. Minard identified "anxiety" as a psychological condition affecting her physical pain and stated that Plaintiff's experience of pain or other symptoms "frequently" interfered with her attention and concentration needed to perform even simple work tasks. R. 1077. Dr. Minard noted that Plaintiff can tolerate moderate work stress. *Id*. Dr. Minard indicated Plaintiff can sit for up to eight hours and stand/walk for about two hours in a eight-hour working day. R. 1078. Dr. Minard concluded by indicating his opinion that Plaintiff is not capable of working a full-time schedule at any level of exertion and has been unable to work on a regular and continuing basis since August 10, 2017.

### III.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

8

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> [Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. *Id.*

9

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the

following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since October 1, 2016, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus, degenerative disc disease of the lumber and cervical spine, fibromyalgia, obesity, osteoarthritis, status post right shoulder arthroplasty, radiculopathy, neuropathy, dyslipidemia, thyroid disorder, and history of atrial fibrillation (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds and crawl. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant must avoid all workplace hazards such as moving machine and unprotected heights. She is limited to occasional overhead reaching with bilateral upper extremities. The claimant can tolerate frequent exposure to extreme cold, vibration, fumes, odors, dusts, gases, and other poor ventilation.

6. The claimant is capable of performing past relevant work as a front desk clerk, tax preparer, medical receptionist, and economic service worker. This work does not require the performance of work-related activities precluded the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2016, through the date of the decision (20 C.F.R. § 404.1520(f) and 416.920(f)).

R. 15-26.

# V.   <u>DISCUSSION</u>

## A.  Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1968)).

"The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157, 203 L. Ed. 2d 504 (2019); *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citing *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

**B.  Written Contention of the Parties**

Plaintiff, in her Motion for Summary Judgment and Brief in Support thereof, asserts (1) the ALJ failed to properly evaluate Plaintiff's mental impairments; (2) substantial evidence does not support the ALJ's residual functional capacity ("RFC") assessment; (3) the ALJ erred in her evaluation of the opinion of Plaintiff's treating provider Alex Minard, M.D.; (4) substantial evidence does not support the ALJ's symptom evaluation; and (5) the decision in this claim made by the Commissioner was unconstitutional. ECF No. 14 at 1. Plaintiff seeks remand in this matter. ECF No. 14 at 21.

Defendant, in her Motion for Summary Judgment and Brief in Support thereof, asserts that (1) substantial evidence supports the ALJ's decision not to include mental functional limitations in the RFC finding; (2) the RFC finding is capable of meaningful review because the ALJ thoroughly explained why Plaintiff remained capable of working despite her limitations; (3) the ALJ followed the regulations in assessing the persuasiveness of Dr. Minard's opinion, and substantial evidence supports the ALJ's fact-finding; (4) substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints; and (5) Plaintiff's separation of powers argument does not entitle her to a rehearing of her disability claim and moreover, the rehearing request should be denied under various doctrines, including the harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and broad prudential considerations. ECF No. 16.

**C.  Analysis of the Administrative Law Judge's Decision**

**1.  Substantial evidence supports the ALJ's decision not to include mental functional limitations in the RFC findings.**

Plaintiff argues that the ALJ failed to include Plaintiff's mild mental limitations into the RFC and, thus, argues that this error warrants remand. ECF No. 14 at 7-9. Defendant argues that substantial evidence supports the ALJ's decision not to include mild mental functional limitations

in greater detail in the RFC; Defendant argues that Plaintiff's mild mental limitations were so slight

that they would not affect her ability to work. ECF No. 17 at 6-9.

In her opinion, the ALJ described:

> Concerning mental health, the claimant had diagnoses of depressive disorder and
> anxiety disorder. However, the record reveals the claimant experiences no more
> than minimal limitations. In fact, the claimant received no specialized mental health
> treatment. Her examinations were benign. Furthermore, during the consultative
> psychological evaluation the claimant has no more than minimal limitations. The
> record supports the claimant's depression and anxiety are nonsevere.

R. 18. After evaluating each functional area, including examples and descriptions of Plaintiff's

corresponding life activities, the ALJ found that claimant only had mild limitations in

understanding, remembering or applying information, in interacting with others, concentrating,

persisting or maintain pace, and in adapting or managing oneself. R. 19. Accordingly, the ALJ

concluded there was not more than a minimal limitation in claimant's ability to do basic work

activities based upon her mild, medically determinable mental impairments. *Id*. The ALJ cited to

the opinions of two separate state agency psychological consultants who, upon review of Plaintiff's

records, concluded claimant had no severe mental health impairments. R. 19-20.

The ALJ provided that the forthcoming RFC assessment reflected the degree of limitation

the ALJ found in the "paragraph B" regarding Plaintiff's mental function analysis and that she

considered all of Plaintiff's impairments, nonsevere and severe, when assessing the RFC. R. 19

("The undersigned considered all of the claimaint's medically determinable impairments,

including those that are not severe, when assessing the claimaint's [RFC].").

In the RFC, the ALJ specifically detailed her evaluation of Dr. Minard's opinion, which

included his opinion that Plaintiff's symptoms would frequently interfere with attention and

concentration, that claimant was capable of performing moderate stress level jobs, and that

claimant would need unscheduled breaks. R. 25. The ALJ found Dr. Minard's opinion to be non-

persuasive. R. 25. The ALJ ultimately concluded in the RFC that "the record as a whole establishes that [Plaintiff] retains the capacity to perform work activities with the limitations set forth above." R. 25.

In determining a claimant's RFC, the ALJ must consider "'all of [the claimant's] medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two" of the sequential analysis. *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). The ALJ's ruling must include a narrative as to how the evidence supports her conclusion, citing specific medical facts and non-medical evidence. *Id*. An ALJ may exclude an analysis of mental limitations from the RFC narrative or the hypothetical questions posed to a vocational expert so long as the ALJ "'can explain why [a claimant's limitations] in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC. 'For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020)(quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). *See also Blevins v. Colvin*, No. 5:15-CV-14240, 2016 WL 6987169, at *15 (S.D.W. Va. Sept. 16, 2016), *report and recommendation adopted*, No. 5:15-CV-14240, 2016 WL 6988502 (S.D.W. Va. Nov. 28, 2016)("an ALJ need not incorporate restrictions in the RFC to reflect a claimant's non-severe impairments when the ALJ reasonably determines such impairments do not actually result in work-related functional limitations."); *Strempel v. Astrue*, 299 Fed. Appx. 434, 439 (5th Cir. 2008) (upholding RFC determination that did not expressly account for any mental impairment where evidence in record suggested that the claimant did not have a mental condition that imposed more than minimal limitations).

Remand is appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 635. Reviewing courts should not be "left to guess about how the ALJ arrive at [their] conclusions on the [claimaint's] ability to perform relevant functions." *Mascio*, 780 F.3d at 637. The reviewing court's sole responsibility when assessing an ALJ's finding of a claimant's RFC, as it is with all ALJ findings, is to determine whether the ALJ's conclusion is consistent with the governing legal principles, is rational, and is supported by substantial evidence. *Blevins*, No. 5:15-CV-14240, 2016 WL 6987169, at *15 (S.D.W. Va. Sept. 16, 2016) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

In the instant case, ALJ Serafin explained why the Plaintiff's mild mental limitations examined at step three did not translate into a workplace limitation in the RFC – it did not affect her ability to work. R. 19 ("Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))."). The ALJ conducted a careful analysis including consideration of Plaintiff's "paragraph B" abilities, Plaintiff's daily activities, Plaintiff's lack of specialized mental health treatment, and the results of Plaintiff's psychological evaluations. The ALJ determined that Plaintiff's mental impairments were non-severe and did not cause more than a minimal limitation in her ability to perform basic work-like activities.

The ALJ's extensive discussion of the medical evidence related to Plaintiff's mental impairments, her explanation as to why Plaintiff's mental limitations resulted in only minimal, non-severe functional limitations, and her statements explaining that she considered all of the

Plaintiff's determinable impairments are more than sufficient to demonstrate that the ALJ considered Plaintiff's non-severe impairments when assessing her RFC. *See Kins v. Comm'r of Soc. Sec.*, Civil Action No. 3:14-CV-86, 2015 WL 1246286, at *23–24 (N.D. W. Va. Mar. 17, 2015) (finding that the ALJ properly considered a nonsevere impairment, despite not explicitly addressing it in the RFC section of the decision, where the ALJ elsewhere "made specific findings and provided an explanation for her conclusion that [the non-severe impairment] resulted in only minimal functional limitations").

After a careful review of the record and the ALJ's decision, the undersigned **FINDS** that the ALJ properly considered Plaintiff's mental impairments when formulating her RFC assessment, and substantial evidence supports the ALJ's decision.

## 2. The RFC assessment is capable of meaningful review, and the RFC assessment is supported by substantial evidence.

Plaintiff argues substantial evidence does not support the ALJ's RFC assessment as the ALJ failed to set forth rationale for her opinion. Plaintiff specifically argues that the ALJ failed to make a finding regarding the amount of time the Plaintiff could sit, stand, or walk, regarding the Plaintiff's obesity, and the total effects of Plaintiff's physical impairments. ECF No. 14 at 9-12.

Defendant argues the Plaintiff is impermissibly asking the Court to reweigh the evidence and substitute its own judgment for that of the ALJ's. ECF No. 17 at 9-12. Defendant argues that the ALJ thoroughly explained why the Plaintiff could work, despite her physical limitations, including her obesity. *Id.*

Regarding Plaintiff's ability to sit, stand or walk, the ALJ noted Plaintiff's testimony that she has degenerative disc disease of her back and experiences back pain, that she has difficulty with standing, sitting, and walking, and that she needs to get up and move or take breaks. R. 22. The ALJ, after careful consideration of the evidence, found that claimant's statements concerning

the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. R. 22. The ALJ examined the progress notes from Dr. Richards and indicated Plaintiff's examinations were essentially normal and when Dr. Richards recommended physical therapy, Plaintiff declined due to concerns regarding finances and travel. R. 23.

While Dr. Minard opined that Plaintiff could sit eight hours and stand and/or walk only two hours with alternating and shifting positions, the ALJ found the opinion of Dr. Minard unpersuasive as the objective evidence was more consistent with the finding the claimant could perform light work. R. 25. The ALJ specifically wrote that "[t]here is no evidence to support such limitations in standing and walking as her muscle strength and gait were generally normal. Furthermore, there is no evidence the claimant could not complete an eight-hour workday as her reported activities of daily living are not significantly limited. The claimant reported she takes care of her personal hygiene, prepare meals, performs household chores, shops, reads, [crochets], watch television, attends church, and her grandchildren ballgames." R. 25.

Regarding Plaintiff's obesity, the ALJ wrote:

> The claimant had body mass index ratios ranging from 46.4 to 51. The claimant's weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the functional limitations determined herein. Although the claimant's obesity clearly contributed to some of her other problems, the evidence fails to show it led to the degree of limitations she alleged.

R. 24. The ALJ's found that the Plaintiff has "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds and crawl. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant must avoid all workplace hazards such as moving machinery and unprotected heights. She is limited to occasional overhead reaching with the bilateral upper extremities. The

claimant can tolerate frequent exposure to extreme cold, vibration, fumes, odors, dusts, gases, and other poor ventilation." R. 21. The ALJ concluded, "[i]n summary, the claimaint's subjective complaints and alleged limitations are not fully persuasive and the record as a whole establishes she retains the capacity to perform work activities with the limitations set forth above. R. 25.

Here, the undersigned was able to conduct a meaningful review of the ALJ's RFC determination because the ALJ cited evidence from Plaintiff's medical examinations and treatment history, hearing testimony, and the opinions of the state agency consultants to support the ALJ's finding that Plaintiff could perform light work. The ALJ addressed inconsistencies and put forth her findings on said inconsistencies after her analysis. For example, the ALJ noted that progress notes from Dr. Richards reflected Plaintiff's complaints of multiple joint and back pain, but the ALJ also noted that Plaintiff's exams were essential normal, Plaintiff declined to attend physical therapy and failed to follow up on chiropractic treatment as recommended, and there were no indications of change to medication or dosage. R. 23. As a second example, the ALJ explained the inconsistencies between Dr. Minard's treatment notes and his opinion provided in the 2021 Questionnaire and articulated that she found his opinion to be unpersuasive as the objective evidence, is more consistent with the finding that claimant could perform light work.

Furthermore, the undersigned **FINDS** that substantial evidence supports the RFC. The record, as cited by the ALJ in her decision, reflects her careful review. The ALJ detailed how the record shows Plaintiff to be active in daily life, including attending her grandchildren's baseball games, grocery shopping, crocheting, and attending weekly lunches with friends. The ALJ presented Plaintiff's treatment history including surgical treatment, physical therapy, non-compliance with treatment, MRI results, examination conclusions, and more. The ALJ "showed her work" as required. *Cf. Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir.

2017) ("[T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.").

The undersigned agrees with the Commissioner that Plaintiff's differences with the ALJ are about how Plaintiff would weigh the evidence differently from the ALJ, which is insufficient to disturb the ALJ's ruling. Given the ALJ's detailed review of the record, and weighing of the evidence in the fashion which the regulations would direct, the undersigned **FINDS** the RFC is reasonable and supported by substantial evidence.

### 3. The ALJ did not err in her evaluation of the opinion of Plaintiff's treating provider Alex Minard, M.D. Further, the ALJ had no duty to recontact Dr. Minard.

(i)   Consideration of Medical Opinion

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Minard; specifically, Plaintiff asserts that the ALJ erred in assessing the supportability of Minard's opinion and in concluding that Minard's opinion lacked objective findings. Plaintiff further argues that if there was ambiguity or questions regarding Minard's opinion, that the ALJ should have contacted Minard for clarification. Plaintiff concludes that the ALJ was required to find persuasive Minard's opinion as written.

Defendant argues the ALJ followed the regulations in assessing Dr. Minard's opinion, and further argues that substantial evidence supports the ALJ's conclusion that Minard's opinion was unpersuasive. Defendant contends that the ALJ had no obligation to contact Minard for more information where sufficient evidence already existed to make an evaluation.

For claims filed after March 27, 2017, an ALJ must consider medical opinions pursuant to 20 C.F.R. § 404.1520c *et seq*. Most importantly, an ALJ must consider the factors of

"supportability"[2] and "consistency"[3] when determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2) and (c). "[A]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has failed to give a sufficient reason for the weight afforded a particular opinion[.]" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015).

While an "ALJ need not explicitly recount the details of this analysis in the written opinion," the ALJ must "give good reasons in the decision for the weight ultimately allocated to medical source opinions." *Cook v. Berryhill*, No. 2:16-CV-85, 2018 WL 1010485, at *6 (N.D.W. Va. Feb. 22, 2018) (Bailey, J.) (quoting *Taylor v. Colvin*, 2016 WL 4581338, at *4 (N.D. W.Va. 2016) (Bailey, J.)). Assignment of weight on grounds such as "the objective evidence," "the objective evidence or the claimant's treatment history," and the "objective evidence and other opinions of record" are not sufficient explanations as to why an ALJ assigns weight to particular opinions. *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016).

Rather, the ALJ should provide a "narrative discussion" to explain why certain opinions are afforded a particular weight. *Id.* Merely stating that an opinion would receive little weight because it was inconsistent with "the objective evidence and other opinions of record," is insufficient because, "[w]ithout more specific explanation of the ALJ's reasons for the differing weights [s]he assigned various medical opinions, neither we nor the district court can undertake

---

[2] "Supportability" is defined as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[3] "Consistency" is described as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

meaningful substantial-evidence review." *Id.* (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

In her written opinion, the ALJ summarized Dr. Minard's treatment notes, including references to concurrent notes made by Dr. Richards and Dr. Nutter during their consults with the Plaintiff during the same time frame. R. 22-23. The ALJ then evaluated Dr. Minard's opinion as follows:

> On January 22, 2021, Alex Minard, M.D., completed a physical assessment form and found at times the claimant's emotional factors contribute to the severity of her symptoms and limitation. He indicated her symptoms would frequently interfere with attention and concentration. Dr. Minard stated the claimant was capable of performing moderate stress level jobs. He noted the claimant could lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit eight hours, and stand and/or walk two hours with alternating and shifting positions. She would need unscheduled breaks. The claimant does not require a cane or other assistive device. Dr. Minard noted manipulative, postural, and head movement limitations. He stated the claimant would be absent about three days per month. Dr. Minard indicated the claimant could not work a full-time work schedule at any exertional level (eight hours per day, five days per week) as of August 10, 2017. The undersigned finds the opinion of Dr. Minard not persuasive as the objective evidence is more consistent with finding the claimant could perform light work. There is no evidence to support such limitation in standing and walking as her muscle strength and gait were generally normal. Furthermore, there is no evidence the claimant could not complete an eight-hour workday as her reported activities of daily living are not significantly limited. The claimant reported she takes care of her personal hygiene, prepare meals, performs household chores, shops, reads, [crochets], watch television, attends church, and her grandchildren ballgames.

R. 25 (internal citations omitted); *see also* R. 1075-1081.

Here, the ALJ provided good, specific reasons as to why she found Dr. Minard's opinion unpersuasive, and thus, her determinations should not be disturbed. The ALJ articulates that even though Dr. Minard's opinion concluded that Plaintiff could not work a full-time work schedule, Dr. Minard's opinion was not found to be persuasive because it was inconsistent with record and the objective evidence. The ALJ specifically notes that despite Dr. Minard's claims, Plaintiff's muscle strength and gait were "generally normal" and "her reported activities of daily living are

21

not significantly limited." R. 25. The ALJ further explained that Dr. Minard's opinion of Plaintiff's capacity to focus on and complete activities during an eight-hour workday was inconsistent with and not supported by Plaintiff's own reports of her capability to perform activities in daily life.

Because the ALJ provided a full narrative discussion as to her review of Dr. Minard's treatment of the Plaintiff and why she afforded Dr. Minard's opinion little weight, this undersigned was able to undertake a meaningful review. Further, because the ALJ provided good reasons, supported by substantial evidence, for her conclusion that Dr. Minard's opinion is unpersuasive, the undersigned **RECOMMENDS** that the Court find that the ALJ did not err in her evaluation of Dr. Minard's opinion.

   (ii)   Recontacting Medical Source

An ALJ is required to consider all impairments the claimant says they have or about which she receives evidence. 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ or Agency "may" recontact a medical source. *See* 20 C.F.R. § 404.1520b(b)(2)(i). However, "[w]hen there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have." 20 C.F.R. § 404.1520b(3).

The undersigned would note the recontacting of a medical source is discretionary. Here, there was ample evidence in the record regarding Plaintiff's prior medical treatment and diagnoses as well as the treating sources' medical opinions. The ALJ had no duty to solicit further information on Plaintiff's behalf. The ALJ's opinion was comprehensive and fully articulated how she weighed and evaluated medical opinions and the extent to which each medical opinion was consistent with the record. The ALJ's decision should not be disturbed where the ALJ, after

carefully considering all evidence, exercised her discretion not to recontact physicians but rendered a clear decision supported by substantial evidence.

The undersigned **FINDS** the ALJ did not err by choosing not to recontact any medical sources before she considered the medical opinions, weighed those opinions against the evidence of record, and articulated in her opinion the reasons for affording some medical opinions more weight than others.

4. **Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.**

Plaintiff argues that the ALJ erred in evaluating the Plaintiff's subjective complaints, ECF No. 14 at 16-20, whereas Defendant argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints, ECF No. 17 at 14-16.

As part of the RFC assessment, the ALJ must evaluate a claimant's "statements and symptoms regarding the limitations caused by her impairments." *Linares v. Colvin*, 2015 WL 4389533, at *5 (W.D.N.C. July 17, 2015) (citing 20 C.F.R. §§ 404.1529, 416.929; *Craig v. Chater*, 76 F.3d 585, 593-597 (4th Cir. 1996)). A claimant's symptoms "must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the [symptoms], in the amount and degree, alleged by the claimant." *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (quoting *Craig*, 76 F.3d at 591).

There is no requirement that the ALJ reference or analyze how claimant's testimony compares to every individual item of objective medical evidence; instead, the ALJ must simply "assess whether the claimant's subjective symptom statements are consistent with the record as a whole." *Carter v. Saul*, No. CV 1:19-00191, 2020 WL 1502860, at *7 (S.D.W. Va. Mar. 30, 2020) (quoting *Vass v. Berryhill*, 2018 WL 4737236, at *6 n.4 (W.D. Va. June 12, 2018), adopted by 2018 WL 4704058 (W.D. Va. Sept. 30, 2018)). "When considering whether an ALJ's credibility

determinations are supported by substantial evidence, the Court does not replace its own credibility assessments for those of the ALJ; rather, the Court studies the evidence to determine if it is sufficient to support the ALJ's conclusions." *Carter*, No. 2020 WL 1502860, at *7 (quoting *Coleman v. Colvin*, 2015 WL 764023, at *15 (S.D.W. Va. Feb. 23, 2015)).

Here, the ALJ recounted Plaintiff's testimony as follows:

The claimant testified prior to right shoulder surgery she could not raise her arm or turn the steering wheel in her car. She stated after surgery her range of motion improved but she still does not have full range of motion. The claimant noted she could not reach behind her back or neck. She indicated she could reach overhead but not at angles. The claimant testified she was scheduled to have surgery on the left shoulder before COVID. She stated she has degenerative joint disease of the left knee and awaiting knee replacement surgery. The claimant noted she has degenerative disc disease of her back and experiences back pain. She indicated difficulty with standing, sitting, and walking. The claimant testified she has to get up and move or take breaks. She stated she tried physical therapy but it did not help. The claimant noted she uses heat and if really bad takes Hydrocodone. She indicated a history of atrial fibrillation with cardioversion and damage of left atrium that causes her tire easily. The claimant testified she has fibromyalgia and that it causes fatigue, body aches, and spasms.

R. 22. The ALJ went on to conclude,

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The objective findings do not corroborate the allegations to the disabling extent as asserted by the claimant.

R. 22.

Here, the ALJ performed the necessary analysis to determine whether Plaintiff's subjective complaints are consistent with the record as a whole. The ALJ considered Plaintiff's testimony about her symptoms, in light of the medical evidence, and determined the findings do not corroborate the allegations to the extent asserted by the Plaintiff. This Court cannot replace the ALJ's credibility determination with its own or reweigh the evidence.

5. **Plaintiff's constitutional challenges must fail because she cannot demonstrate harm resulting from the removal Act's removal provision for the Commissioner and because of other prudential considerations.**

   (i)   <u>Plaintiff is not entitled to a re-hearing of her claim based upon the Act's limitation for removal of the Commissioner of the agency Defendant.</u>

Plaintiff argues – and Defendant does not dispute – that the provision under the Act for appointment of the Commissioner of the agency is unconstitutional to the extent which it hinders the President's ability to remove the Commissioner from their position without cause. Under the Act:

> The Commissioner shall be appointed for a term of 6 years, except that the initial term of office for Commissioner shall terminate January 19, 2001. In any case in which a successor does not take office at the end of a Commissioner's term of office, such Commissioner may continue in office until the entry upon office of such a successor. A Commissioner appointed to a term of office after the commencement of such term may serve under such appointment only for the remainder of such term. <u>An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office.</u>

42 U.S.C. § 902(a)(3) (emphasis added). This portion of the Act is in tension with Article II of the United States Constitution, which provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. As a practical matter, the Constitutional structure is that such lesser officers aid the President in discharging executive duties. *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). A statute which limits the President's ability to remove a lesser executive officer such as the Commissioner thus diminishes that officer's accountability to the President, in violation of the separation of powers requirement. Id.; *See also Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542, at *3 (O.L.C. July 8, 2021) ("To meet his 'take Care' duty, the President must have some

ability to remove executive officers who the President believes are failing to satisfy the constitutional command of faithful execution of the laws.").

First, despite this constitutional defect, the undersigned finds that Defendant is correct that this is not a basis for setting aside the ALJ's decision. As Defendant convincingly notes, the ALJ in this matter was not appointed by a Commissioner who is subject to the Act's removal restriction set forth at 42 U.S.C. § 902(a)(3). Rather, the ALJ herein was appointed by an Acting Commissioner. R. 17 at 18 (ALJ Serafin was appointed by then-Acting Commissioner Berryhill). An Acting Commissioner is removable at will, at any time, as the Act does not limit the ability to remove an Acting Commissioner as it does with a Commissioner. Thus, the portion of the Act at issue did not bear on the appointment of the ALJ herein. *See Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021) (concluding that an agency's Acting Director serves the President at-will, unlike that same agency's Director being removable "for cause" per the agency's enabling legislation, thus undercutting challengers' argument that Acting Director's actions should be set aside.) Therefore, Plaintiff cannot impute to the ALJ here the same problematic limitations that perhaps she could if the ALJ were appointed by a Commissioner who is subject to the removal restrictions.

Secondly, and perhaps more to the point, Plaintiff cannot demonstrate how she was actually harmed in this regard. Even if the Commissioner (or Acting Commissioner, for that matter) is unduly protected from removal, it is unclear what compensable harm Plaintiff here suffered. There is no allegation here that the Commissioner/Acting Commissioner was improperly appointed, or that such officer exercised power that they did not have. Just because there may be an unconstitutional limit on removal of an agency head, that does not necessarily mean that the officer, otherwise duly appointed, exercised power that they did not possess, or otherwise undertook voidable actions. *See Collins*, 141 S. Ct. at 1787 ("Although the statute

26

unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] . . . as void.") (emphasis in original).

Plaintiff has not made any showing that having a Commissioner who is subject to a proper removal provision would have yielded a different result in her claim here, or any other claims, for that matter. Nor has Plaintiff made any showing that the President attempted to remove the Acting Commissioner (or Commissioner), let alone a showing that the President attempted to do so and was thwarted by the Act's limit on removal. Put another way, Plaintiff demonstrates no causal connection between the Act's limit on removal of the Commissioner and the adverse result before the ALJ and Appeals Council below. The Supreme Court has explained that an issue such as the one Plaintiff raises here does not necessitate reversal of agency action absent some harm.

> What we said about standing in Seila Law should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer and that the plaintiff alleges was void. But that holding on standing does not mean that actions taken by such an officer are void ab initio and must be undone.

*Collins*, 141 S. Ct. at 1788, n. 24 (citation omitted).

  (ii)  <u>Several doctrines and prudential considerations weigh in favor of denying Plaintiff's re-hearing request.</u>

As a final matter, the Commissioner raises four doctrines to underscore that Plaintiff's constitutional arguments do not merit relief here. After careful review, the undersigned is in agreement with the Commissioner, and memorializes those arguments here in summary fashion.

First, the harmless error doctrine applies to prevent Plaintiff's constitutional challenge. Courts have long recognized that certain defects in the law nonetheless yield harmless results

which do not necessitate drastic court action. *See Sherman v. Smith*, 89 F.3d 1134, 1137 (4th Cir. 1996). Here, Plaintiff makes no showing that the Act's removal provision was fundamentally flawed such that it somehow informed or played a role in the ALJ's decision against her. Thus, Plaintiff's arguments fail.

Second, the *de facto* officer doctrine applies to preclude Plaintiff's constitutional challenge. This longstanding doctrine applies to ratify the actions of government officers whose positions may be technically defective but whose actions assure that the government operates effectively. *See Rockingham County v. Luten Bridge Co.*, 35 F.2d 301, 306-307 (4th Cir. 1929). Here, the doctrine is applicable because otherwise, Plaintiff's argument, if accepted, would upend thousands of Social Security benefits cases, to no practical end. Plus, application of the doctrine to save government action is more in question where an official's very <u>appointment</u> is in question. *Id.*; *see also Ryder v. U.S.*, 515 U.S. 177, 182-83 (1995). Here, there is no question about the Commissioner's <u>appointment</u>, but rather about the Commissioner's <u>removal</u>. This militates even more in favor of upholding agency action here. Plaintiff does not articulate any reason to throw such a massive administrative operation into chaos for the sake of advancing these constitutional arguments. Thus, on application of the *de facto* officer doctrine, Plaintiff's constitutional arguments fail.

Third, the rule of necessity applies to disqualify Plaintiff's constitutional challenge. Under this doctrine, a judge must preside over a matter where that adjudicator and all others in the same position have the same defect in that position. *See U.S. v. Will*, 449 U.S. 200, 213-214 (1980). Here, if the ALJ deciding Plaintiff's case were to be disqualified because of Plaintiff's constitutional arguments, then all other adjudicators would be similarly disqualified. This would

leave Plaintiff (and a large number of other claimants) without a forum to adjudicate their claims. As such, Plaintiff's constitutional arguments fail because of the rule of necessity.

Fourth and finally, prudential considerations bar Plaintiff's constitutional arguments. As Defendant correctly points out, if Plaintiff prevails with her constitutional arguments, that would lead to repetitious re-hearings for those whose cases already have been adjudicated by an ALJ. This of course would stretch agency resources and greatly delay the hearing of cases for claimants who have not yet had such review. And there is no reasonable argument that a re-hearing in Plaintiff's matter, simply because of her constitutional arguments, would result in any more effective or different outcome. The remand which Plaintiff seeks would be senseless.

(iii)    Conclusion as to Constitutional Challenges

Accordingly, because Plaintiff cannot demonstrate harm resulting from the removal Act's removal provision for the Commissioner, and because of other prudential considerations, her challenge fails in this regard.

## VI. RECOMMENDED DECISION

For the reasons articulated above, the undersigned recommends Plaintiff's Motion for Summary Judgment be **DENIED**, ECF No. 14, and Defendant's Motion for Summary Judgment be **GRANTED**, ECF No. 17, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge.

Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of** *de novo* **review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide an authenticated copy of this Report and Recommendation to all counsel of record. Additionally, as this report and recommendation concludes the referral from the District Court, the Clerk is further **DIRECTED** to terminate the magistrate judge's association with this case.

**Respectfully submitted August 23, 2022.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE